**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| Julio TOT QUIP (D.O.B. 10/01/1993) | ) | |
| | ) | Case No.   1:26-cv-12121 |
| Petitioner, | ) | |
| | ) | **PETITION FOR WRIT** |
| v. | ) | **OF HABEAS CORPUS** |
| | ) | |
| WARDEN, Detention Center, | ) | |
| David WESLING, Field Office Director, | ) | |
| TODD LYONS, Acting Director U.S. | ) | |
| Immigrations and Customs Enforcement, | ) | |
| MARKWAYNE MULLIN, U.S. Secretary | ) | |
| of Homeland Security, TODD BLANCHE, U.S. | ) | |
| Attorney General | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

1.   Petitioner Julio TOT QUIP brings this petition for a writ of habeas corpus to seek enforcement of his rights as a member of the class certified by United States District Judge Patti B. Saris of the District of Massachusetts in *Guerrero Orellana v. Moniz et al*, No. 25-cv-12664 (D. Mass.)  ("*Guerrero Orellana"*).

2.   Petitioner seeks immediate release because the Respondents—contrary to the declaratory judgment in *Guerrero Orellana,* dozens of clear precedents in this District, and hundreds of similar rulings across the country—have unlawfully detained Petitioner (and absent this Court's intervention, will continue to detain him) by denying his statutory and constitutional rights to a bond hearing.[1]

---

[1] While Petitioner plainly would be entitled to a bond hearing were he to remain detained, immediate release from detention is the most appropriate remedy in these circumstances, as discussed below.

**Background**

3.     Petitioner Julio TOT QUIP resides in Maine at 186 Grant Street, #2, Portland, Maine 04101. Upon information and belief, Petitioner has been present in the United States since 2023. Petitioner is a citizen of Guatemala. He has a 9-year-old daughter, Saida Magaly Tot Macz, born on September 24, 2016. Upon information and belief, Petitioner's date of birth is October 3, 1993.

4.     Upon information and belief, Petitioner entered the United States without inspection at the Southern Border on or about 2023.

5.     Petitioner was arrested in Portland, Maine on the street by U.S. Immigration and Customs Enforcement ("ICE") and/or other federal agents acting on ICE's behalf on or about the morning of May 7, 2026.

6.     Upon information and belief, Petitioner is in the physical custody of Respondents being processed in Burlington, Massachusetts. Petitioner does not appear currently in the ICE Detainee Locator, and he cannot currently be located. He now faces unlawful detention because the Department of Homeland Security (DHS) and the Executive Office for Immigration Review (EOIR) have refused to abide by the declaratory judgment issued on behalf of the certified class in *Guerrero Orellana.*

**Jurisdiction**

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question).

8.     Venue is proper because, on information and belief, Petitioner is detained in the District of Massachusetts.

**Respondents**

9. Respondent Warden Detention Center is the immediate custodian of the Petitioner.

10. Respondent David Wesling is the New England Field Office Director for U.S. Immigration and Customs Enforcement.

11. Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement.

12. Respondent Markwayne Mullin is the U.S. Secretary of Homeland Security.

13. Respondent Todd Blanche is the Acting United States Attorney General, and, as such, the head of the Department of Justice.

14. All respondents are named in their official capacities. One or more of the respondents is Petitioner's immediate custodian.

**As a Member of the *Guerrero Orellana* Class, Petitioner's Detention is Subject to 8 U.S.C. § 1226(a), And Petitioner is Accordingly Entitled to a Bond Hearing**

15. Petitioner meets the requirements for membership in, and is a member of, the class certified by this Court in *Guerrero Orellana v. Moniz*, --- F. Supp. ---, 2025 WL 3033769, at *14 (D. Mass. Oct. 30, 2025) (defining the class); *see also Guerrero Orellana v. Moniz*, --- F. Supp. 3d --, 2025 WL 3687757, at *10 (D. Mass. Dec. 19, 2025) (modifying the class), as follows:

   a. On information and belief, Petitioner is currently being held in ICE's custody in the District of Massachusetts;
   b. On information and belief, Petitioner is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in immigration proceedings;
   c. On information and belief, Petitioner's most recent entry into the United States was across the Southern Border without being paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A);
   d. On information and believe, Petitioner does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c);
   e. Petitioner is not subject to post-final order detention under 8 U.S.C. § 1231; and
   f. Petitioner is not a person whose most recent arrest occurred at the border while they were arriving in the United States and has been continuously detained

thereafter.

16.    As a member of the certified class in *Guerrero-Orellana*, Petitioner is covered by this Court's Declaratory Judgment in that case, issued on December 19, 2025, as follows:

> The Court declares that the members of the certified class are not subject to detention under 8 U.S.C. § 1225(b)(2). Defendants' policy of subjecting members of the certified class to detention under 8 U.S.C. § 1225(b)(2)(A) without consideration for bond and a custody redetermination (i.e., bond) hearing is unlawful and violates the Immigration and Nationality Act and its regulations. The members of the certified class are subject to detention under 8 U.S.C. § 1226(a), including access to consideration for release on bond and/or conditions before immigration officers and Immigration Judges. After joining the class, the member of the certified class shall remain subject to this order notwithstanding any subsequent change in their location, facility of detention, or venue of immigration proceeding.

*Guerrero Orellana*, 2025 WL 3687757, at *10.   Therefore, Petitioner is entitled to a custody redetermination hearing with strong procedural protections. *See Hernandez-Lara*, 10 F.4th at 41; *Doe*, 11 F.4th at 2; *Brito*, 22 F.4th at 256-57.

17.    In reaching the conclusion that members of the certified class were eligible for bond hearings, this Court rejected the September 5, 2025 decision of the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which purports to require the Immigration Court to unlawfully deny a bond hearing to all persons such as Petitioner.  *See Guerrero Orellana,* No. 1:25-cv-12664, at *24, n.4 (D. Mass. Oct. 3, 2026) (granting preliminary judgment and noting, "For the reasons explained in this opinion, the Court does not find the BIA's analysis of the issue to be persuasive").[2]

18.    In the face of this Court's decision in *Guerrero Orellana,* on January 13, 2026, Chief Immigration Judge Teresa L. Riley sent an email to all Immigration Judges in the country instructing them not to give effect to class-wide declarations like the declaration issued by

---

[2] The BIA's decision was contrary to decades of prior rulings and practice by immigration authorities. In this context, the BIA's reversal and newly revised interpretation of the statute are not entitled to any deference.  *See Loper Bright Ent. v. Raimondo*, 603 U.S. 369, 412-13 (2024).

the Court in *Guerrero Orellana. See* Request for Status Conference, *Guerrero-Orellana v. Moniz*, No. 25-12664-PBS (D. Mass. Jan. 16, 2026).[3]

19.  Since January 13, 2026, observers at the Chelmsford Immigration Court have noted that some Immigration Judges are systematically denying bond hearings to individuals set for hearings who asserted membership in the *Guerrero Orellana* class, following the reasoning outlined in Chief Immigration Judge Riley's email. *Id.*

20.  The responsible administrative agency has therefore predetermined that Petitioner will be denied a bond hearing.

21.  Judge Saris' December 19, 2025 declaratory judgment in *Guerrero Orellana* has not been stayed pending appeal and remains fully binding on the parties to that proceeding, including the Attorney General and the Acting Director of the Executive Office for Immigration Review, officials with supervisory authority over immigration judges; the Acting Field Office Director at ICE Boston, the Acting Director of ICE, and the Secretary of Homeland Security.  *See* First Am. Pet'n at 1, *Guerrero Orellana v. Moniz*, No. 25-cv-12664 (D. Mass. Sep. 22, 2025), ECF No. 10.  As a member of the *Guerrero Orellana* class, Petitioner is also a party to that proceeding and is entitled to all of the legal protections it affords.

22.  In the face of the *Guerrero Orellana* declaratory judgment, Respondents' continuing denial of the right of class members such as Petitioner to a bond hearing can no longer be claimed by the government as a difference of statutory interpretation (a claim already strained beyond credulity prior to the declaratory judgment, given the dozens of rulings issued by this Court consistently rejecting the government's position). The Respondent's denial of a

---

[3] *Available at https://fingfx.thomsonreuters.com/gfx/legaldocs/byvrbdwokve/01162026immigration.pdf.*

bond hearing to Petitioner and to other class members is instead a conscious, overt and blatant act of defiance against a lawful judicial determination by which the Respondents (and, therefore, those under the Respondents' direction) are specifically bound, and ultimately a rejection of the rule of law.

23.    In *Gregorio Canel Ajbal v. Wesling et al.,* No. 1:26-cv-10190 (D.Mass. March 27, 2026)[4], the Court addressed the Respondents' continued reliance on §1225 to deny bond hearings to members of the *Guerrero Orellana* class. Finding for the Petitioner, Judge Sorokin observed:

> *It was a violation of law* for an IJ, acting under the authority of two different officials who are bound by [the *Guerrero Orellana*] declaration, to find [Petitioner's] detention was not governed by § 1226. And, to the extent a representative of ICE or the Department of Homeland Security advocated for or acquiesced in such a finding despite [the *Guerrero Orellana*] declaration, *they likewise violated the law.*

*Canel Ajbal*, *Id.,* at 9 (emphasis supplied) (concluding that neither the respondents' treating the Petitioner as ineligible for a bond hearing nor their continuing to assert that position in their opposition to the habeas petition was "substantially justified" and awarding petitioner fees and costs under the Equal Access to Justice Act. *Id.* at 11).

**No Requirement of Exhaustion of Administrative Remedies**

24.    There is no requirement that Petitioner exhaust administrative remedies prior to bringing this action.

25.    Petitioner is being irreparably harmed by his ongoing unlawful detention without a bond hearing. *See Aguiriano*, 2025 WL 2403827, at *6-8 (no exhaustion required because "[o]bviously, the loss of liberty is a . . . severe form of irreparable injury" (internal

---

[4] *Available at https://www.courtlistener.com/docket/72156831/27/canel-ajbal-v-wesling/.*

quotation marks omitted)); *Flores Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (declining to require administrative exhaustion, including because "[a] loss of liberty may be an irreparable harm"); *cf. Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) (citing *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986), for proposition that "'[e]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest'").

26. The Immigration Court lacks jurisdiction to adjudicate the constitutional claims raised by Petitioner, and any attempt to raise such claims would be futile. *See Flores-Powell*, 677 F. Supp. 2d at 463 (holding "exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions and its prior interpretation" of the relevant statute).

27. There is no statutory requirement for Petitioner to exhaust administrative remedies. *See Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299, at *4 (D. Mass. July 7, 2025) ("[E]xhaustion is not required by statute in this context.").

28. Accordingly, there is no requirement for Petitioner to further exhaust administrative remedies before pursuing this Petition. *See Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, (1st Cir. 1997) (explaining that, where exhaustion is not required by statute, administrative exhaustion not required in situations of irreparable harm, futility, or predetermined outcome).

29. Based on these well-established principles, this court has specifically rejected the argument that exhaustion is required in a detained noncitizen's challenge to the BIA's decision in *Matter of Yajure Hurtado,* supra:

> a court may hear unexhausted claims in circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." *Flores-Powell v. Chadbourne*, 677 F.Supp.2d 455,463 (D. Mass. 2010) (cleaned up). Such a circumstance "exists when substantial

doubt exists about whether the agency is empowered to grant meaningful redress" as well as "when the potential decisionmaker ... can be shown to have predetermined the issue" *Id.*

*Inlago Tocagon v. Moniz,* 2025 WL 2778023 (Sept. 29 2025), at *2.

**Procedural Due Process Requires that Petitioner be Afforded a Bond Hearing, Without Regard to Which Statute Applies**

30.  As a person residing in the United States, Petitioner enjoys the protections of the Fifth Amendment's Due Process Clause: "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law").

31.  It is well-settled that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Due Process Clause specifically forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. Amend. V.

32.  Of the liberties protected by the Fifth Amendment, none is greater than the right to be free: "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. 678 at 690.

33.  The Supreme Court has thus "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases).

34. In *Rincon v. Hyde,* 2025 WL 3122784, *8-10 (D.Mass. 2025), this Court considered whether a non-citizen who had been detained under § 1225(b) had a constitutional right to an individualized detention hearing, even though the statute itself afforded no such opportunity. Applying the test articulated in *Mathews v. Eldridge*, the Court found that the petitioner's private interest (freedom from detention) was a compelling one, that the government's interest (avoiding the administrative burden of providing a hearing) was relatively minimal, and that the risk of erroneous deprivation in the absence of a hearing was high, such that detaining the petitioner without a bond hearing violated his due process rights under the Fifth Amendment:

> the Court finds that the *Mathews* factors weigh definitely in favor of relief, that Petitioner's detention without a bond hearing violates his due-process rights, and that a bond hearing is an appropriate and minimally invasive additional procedure to ensure that right.

*Id. at *10. See also Inlago Tocagon v. Moniz,* 802 F.Supp.3d 93, 100-01 (D.Mass. 2025) (same); *Tenemasa-Lema v. Hyde,* 2025 WL 3280555, *10-11 (D.Mass. 2025) (same); *Chgllo Chafla v. Scott*, 804 F.Supp.3d 247, 261-64 (D.Me. 2025) (same); *Chiliqunga Yumbillo v. Stamper,* 2025 WL 2783642, *4 (D.Me. 2025); *Padilla Molina v. DeLeon*, 2025 WL 3718728, *6 (E.D.N.Y. 2025) (same, collecting numerous cases). The same conclusion—that a noncitizen who has resided in the country before being detained is entitled as a matter of due process to a hearing to determine whether further detention is warranted, regardless of whether detention is imposed under Section 1226(a) or under Section 1225(b)—applies equally here.

35. Petitioner was arrested inside the United States, far from any border or port of entry and after an extended period of residence in this country. In these circumstances, and without regard to which statute applies, Petitioner's detention cannot lawfully continue if he is not

granted the constitutionally required safeguard of an individualized detention hearing.

**Substantive Due Process Requires that Petitioner be Released,
Without Regard to Which Statute Applies**

36. Beyond the procedural protections afforded by the Fifth Amendment, "[t]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch,* 494 U.S. 113, 125 (1990) (internal quotation marks omitted).

37. "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause. . . ." *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 200 (1989). *See also Foucha v. Louisiana,* 504 U.S. 71, 80 (1992) (freedom from bodily restraint "has always been at the core of the liberty interest protected by the Due Process Clause."). And "[t]he institutionalization of an adult by the government triggers heightened, substantive due process scrutiny." *Reno v. Flores,* 507 U.S. 292, 316 (1993) (O'Connor, J., concurring).

38. Because Petitioner is being unlawfully detained, the government is not taking any steps to effectuate its substantive obligation to ensure that immigration detention bears a "reasonable relation" to its permissible purposes (*i.e.*, the prevention of flight and of danger to the community during the pendency of removal proceedings) and is not impermissibly punitive. *See Zadvydas*, 533 U.S. at 690 (detention, if not ordered in a criminal proceeding, is permissible only where a special justification "outweighs the individual's constitutionally protected interest in avoiding physical restraint," and only where detention

is "subject to strong procedural protections") (recognizing prevention of flight and preventing danger to the community as special justifications); *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

39.   Because Petitioner has not been afforded *any* procedural mechanism (such as a bond hearing) for determining the continuing need for confinement, Petitioner's detention is unlawful, regardless of what statute might apply to purportedly authorize such detention.

**Petitioner's Immediate Release is Warranted**

40.   As the foregoing discussion and the claims which follow make clear, the denial of access to a bond hearing violates Petitioner's statutory and constitutional rights (as well as the express terms of Judge Saris' declaratory judgment in *Guerrero Orellana*) rendering his detention unlawful. While some courts have ordered the holding of a bond hearing as a remedy for this illegal confinement (*see*, *e.g., Gomes v. Hyde,* 804 F.Supp.3d 265, 278 (D.Mass. 2025)), many others have determined that merely providing a prospective bond hearing would be inadequate to remedy the violation of a petitioner's fundamental liberty interests which has already occurred.

41.   These courts have concluded, for variety of reasons, that the most appropriate remedy is instead the detained individual's outright release. In *Lopez Benitez v. Francis,* 795 F.Supp.3d 475, 498 (S.D.N.Y. 2025), for example, the court noted that the petitioner had been detained improperly, under the purported authority of 8 U.S.C. § 1225(b), which provides for mandatory detention. As a result, the government had *never* exercised the discretion required under 8 U.S.C. § 1226(a) to determine, on an individualized basis, whether detention was warranted by flight risk or risk of harm to the community; accordingly, the petitioner's detention was unlawful from the outset, and release was the

appropriate remedy. *See also Yao v. Almodovar*, 2025 WL 3653433, *12 (S.D.N.Y. 2025) (same, collecting numerous cases). In *Naula Munoz v. Wesling*, 1:26-cv-10959-BEM (D.Mass. Feb. 26, 2026), this Court ordered the petitioner's  release (without a bond hearing) where the government, having proceeded on the erroneous assumption that Section 1225(b) applied and Section 1226(a) did not, produced no evidence that it had procured a warrant for petitioner's arrest, as would have been required under Section 1226(a). *See also Davila Macas v. Moniz,* 1:26-cv-10953-BEM (D.Mass. Feb. 26, 2026) (same); *dos Santos v. Noem,* 2025 WL 2370988, at *8-9 (D.Mass. 2025) (ordering immediate release subject to preexisting bond order);  *Diaz Diaz v. Mattivelo*, 2025 WL 2457610 at *4 (D.Mass. 2025) (same); *Jimenez-Figuera v. Bondi*, Case No. 26-cv-865-SRN-LIB at 9 (D. Minn. February 4. 2026) (collecting cases in which immediate release, rather than a bond hearing, was ordered); *Padilla Molina v. DeLeon*, 2025 WL 3718728, *6 (E.D.N.Y. 2025) ("Release from detention is the 'typical remedy' for 'unlawful executive detention,' *Munaf v. Green,* 553 U.S. 674, 693 (2008). . . .").

42.  Immediate release, rather than a bond hearing, is warranted for another reason: the substantial likelihood that a bond hearing would not be conducted in accordance with constitutional requirements, and would once again deny Petitioner his due process rights. In *Singh v. Valdez*, No. 26-cv-1109-WJM (D. Colo. Apr. 1, 2026), the court ordered immediate release without a bond hearing, concluding that "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore" and that "courts across the country have, with increasing frequency, ceased ordering even initial bond hearings" because "Respondents' conduct can no longer be attributed to mere negligence or

ineptitude." *Id.*, slip op. at 10–11. The same reasoning applies here. Despite scores of rulings by this Court making clear that noncitizens detained while residing within the United States are entitled to a bond hearing, and in clear defiance of Judge Saris' order in *Guerrero Orellana*, immigration judges routinely have denied bond hearings to noncitizens who, like the Petitioner, are members of the *Guerrero Orellana* class. As demonstrated by the present case and by hundreds like it that have been filed in this district, the Executive Office of Immigration Review (an agency under the control of the United States Department of Justice) and the immigration judges it employs have acted repeatedly and unabashedly in violation of federal immigration statutes, the Constitution, and the class-wide declaratory judgment issued by this Court.

43. Against this backdrop, there is simply no reason to believe that a bond hearing before an immigration judge would afford the Petitioner the due process to which he is entitled, and every reason to believe that the immigration court system is, today, unable or unwilling to do justice to the noncitizens who appear before it.[5]

44. In sum, there are numerous reasons why immediate release is warranted here. The government—having acted on the flawed assumption that Petitioner was mandatorily detained under Section 1225(b)—cannot show that it made the individualized

---

[5] As a federal judge in New Jersey recently observed:

> The Court cannot ignore that the circumstances surrounding these proceedings [bond hearings before IJs] raise substantial concerns as to whether any non-citizen can receive the impartial hearing that due process requires. . . . [J]udges need not shut our eyes to matters of public notoriety and general cognizance. . . . Respondents have reportedly terminated nearly 100 IJs in recent months. And now openly advertise these vacancies for "deportation" judges. . . . These developments, among others, raise a serious question as to whether the constitutional guarantee of an impartial decisionmaker is being honored in any case brought before an IJ.

*Zheng v. Rokosky*, No. 26-cv-01689, *15 (D.N.J., March 23, 2026) (internal quotation marks and citation omitted).

determination, required both by Section 1226(a) and by the Due Process clause, whether Petitioner ought to have been detained in the first place; as a result, Petitioner's detention was unlawful from its outset.  As well, there is no reason to believe that a bond hearing would be either a fair or impartial process. And, finally, merely requiring Respondents to do now what they were obliged to do all along (provide Petitioner with a bond hearing) while Petitioner remains unjustly confined fails to account for the irreparable harm Petitioner already has suffered.

45.    Petitioner, on knowledge and belief, has had one interaction with law enforcement, but has not committed or been convicted of any offenses that would subject him to mandatory detention under 8 U.S.C. § 1226(c). Ordering a bond hearing would simply compound Petitioner's constitutional injuries. Petitioner's immediate release, not the inadequate and futile exercise of a bond hearing, is the appropriate remedy.[6]

**In Ordering Petitioner's Release, the Court Should Require the Respondents to Provide for Petitioner's Safety and to Return the Petitioner's Documents and Property**

46.    It would seem self-evident (and beyond the need for judicial reinforcement) that in releasing a wrongfully detained individual, the government must do so in a safe manner, and that it must return to the individual any documents or property seized at the time of arrest. Experience, however, demonstrates that these fundamental obligations are not being fulfilled.

---

[6] Some courts have ordered that an individual detained under 8 U.S.C. § 1226(a) and unlawfully denied the right to a bond hearing should be released, either with or without conditions, until a bond hearing is provided. *See*, *e.g.*, *A.M. v. Nessinger*, Case No. 1:26-cv-00048-MSM-PAS, at 5 (D.R.I. 2026) (ordering the petitioner's release pending a bond hearing, subject to minimal release conditions reasonably assuring his appearance); *Morales v. Hyde*, Case No. 1-26-cv-00093-JJM-PAS, at 5-6 (D.R.I. 2026) (ordering petitioner's release pending a bond hearing, and denying the government's request that he be subjected to another form of custody through the wearing of electronic monitoring equipment); *Chogllo Chafla v. Scott,* 804 F.Supp.3d 247, 264 (D.Me. 2025) (ordering petitioners' release until they receive bond hearings). While this interim release would certainly be appropriate if a bond hearing were to be ordered by the Court, the Petitioner's *complete* and immediate release is the most appropriate remedy, for the reasons discussed above.

<u>Documents and Property are not Returned to Immigrants Upon Release</u>

47. The government's failure to return to wrongfully detained immigrants their documents and personal belongings upon release has required judicial intervention on numerous occasions. *See, e.g., J.B.C.O., et al. v. Bondi*, *et al.,* Case No. 0:26-cv-00639-JRT-DTS (D. Minn. March 6, 2026); *Luis P. v. Bondi, et al.,* Case No. 26-cv-1316-JMB-DLM (D. Minn. February 26, 2026); *Segundo A. v. Bondi, et al.,* Case No. 26-cv-1414-JMB/DLM, at 14-15 (D. Minn. February 26, 2026) (combining 27 cases; "in each case, the Court ordered Respondents to return all personal belongings taken from Petitioners during their unlawful detention because Respondents have no lawful claim to such property"); *Rigoberto S.J. v. Bondi, supra* at 7.

48. The impact on immigrants like Petitioner of being deprived, even temporarily, of key documents and personal property was underscored recently by the United States District Court for the District of Minnesota:

> Some petitioners, including J.B.C.O., are the principal breadwinners for their family and, as noted by their counsel, the loss of their work authorization documents has resulted in lost wages and hardships for their family. Other petitioners, including Rosmary N.A., have been left without any form of identification or their bank cards, preventing them from accessing their bank accounts, resulting in food insecurity. And many petitioners, including some in the above-captioned cases, have been released without their cell phones, resulting in their inability to access any documents stored on their phone, contact their friends and loved ones, or perform many other functions of daily life. Still others have lost jobs because of their detention and are hindered in their efforts to secure new ones by their lack of access to their identification documents and cell phones. Petitioners who have lost their driver's licenses have lost the ability to move about freely—and for those who drove for a living (e.g., Uber and Lyft drivers), they have also lost a substantial means of generating income. Perhaps most troublingly, many petitioners, including Christian A.S.C., are terrified that the loss of their personal identification documents will

> subject them to additional arrests because they will not be able to prove who they are — or aren't.

*J.B.C.O., et al. v. Bondi*, *supra* at 16-17 (footnotes omitted). And, unsurprisingly, the government's failure to return key documents and possessions only exacerbates the risk of harm arising from the release of detained individuals in unfamiliar surroundings. *Rigoberto v. Bondi, supra.,* at 8 ("Here, the Government dropped Rigoberto S.J. into a city unknown to him without the one thing he would generally need to secure lodging and travel home: his ID.").

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of 8 U.S.C. 1226(a) and *Guerrero Orellana*

49. Petitioner incorporates by reference the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

50. As a member of the certified class, Petitioner may only be detained, if at all, pursuant to 8 U.S.C. § 1226(a).

51. The order granting partial summary judgment in *Guerrero Orellana* holds that Respondents violate the Immigration and Nationality Act in applying the mandatory detention statute at § 1225(b)(2) to class members.

52. Respondents are parties to *Guerrero Orellana* and bound by the Court's declaratory judgment, which has the full "force and effect of a final judgment." 28 U.S.C. § 2201(a).

53. By denying Petitioner a bond hearing under § 1226(a) and asserting that he is subject to mandatory detention under § 1225(b)(2), Respondents violate Petitioner's statutory rights under the INA and the Court's judgment in *Guerrero Orellana*.

54. Petitioner will not be provided with a bond hearing as required by law.

55. Petitioner's continuing detention is therefore unlawful.

## COUNT TWO
### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))

56. Petitioner incorporates by reference the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

57. Because Petitioner is a person arrested inside the United States and is subject to detention, if at all, under 8 U.S.C. § 1226(a), the Fifth Amendment's Due Process Clause requires that Petitioner receive a bond hearing with strong procedural protections. These include (but are not limited to) the government's obligation, in order to continue Petitioner's detention, to either (1) prove by clear and convincing evidence that Petitioner poses a danger to the community or (2) prove by a preponderance of the evidence that Petitioner poses a flight risk. *See Hernandez-Lara*, 10 F.4th at 41; *Doe*, 11 F.4th at 2; *Brito*, 22 F.4th at 256-57.

58. Petitioner has not been, and will not be, provided with a bond hearing as required by law.

59. Petitioner's continuing detention is therefore unlawful.

## COUNT THREE
### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide an Individualized Hearing for Domestic Civil Detention)

60. Petitioner incorporates by reference the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

61. Petitioner was arrested inside the United States after an extended period of residence in this country. In these circumstances, the Fifth Amendment's Due Process Clause requires that Petitioner be granted the safeguard of an individualized detention hearing.

62. Petitioner's continuing detention without recourse to such a hearing is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

## COUNT FOUR
### Violation of Fifth Amendment Right to Due Process
### (Substantive Due Process)

63. Petitioner incorporates by reference the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

64. Because Petitioner has not been afforded any procedural mechanism (such as a bond hearing) for determining the continuing need for confinement, Petitioner's detention violates the Fifth Amendment's substantive Due Process protections and is unlawful, regardless of what statute might apply to purportedly authorize such detention.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1)    Assume jurisdiction over this matter;

(2)    Order that Petitioner shall not be transferred outside the District of Massachusetts;

(3)    Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(4)    Order that Petitioner be released from detention during the pendency of his habeas proceedings under the Court's inherent Article III authority;

(5)    Declare that Petitioner's detention is unlawful under 8 U.S.C. §1226(a) and under the Due Process clause of the Fifth Amendment to the U.S Constitution.

(6)    Issue a Writ of Habeas Corpus ordering Respondents:

a. to immediately release Petitioner from detention, or, if at the time of the habeas hearing the Court has already ordered Petitioner released under its inherent Article III authority, not to re-detain Petitioner, Require that, in releasing Petitioner from custody,

Respondents shall release him:

a.  in Maine;

b.  during normal business hours;

c. in a well-populated area that is within a quarter mile of public transportation and not more than 30 miles from Petitioner's residence;

d. with all personal documents (including without limitation Petitioner's driver's license, passport, work authorization and other immigration documents) and belongings (including without limitation Petitioner's clothing, cell phone, keys, and wallet);

e. without conditions such as ankle monitors or tracking devices;

f. with attire appropriate to the weather conditions; and

g. after having given at least six hours' advance notice to Petitioner's counsel of the time and place of Petitioner's release.

(7) Require that Respondents not retaliate against Petitioner for the filing of this action and, upon his release, not re-detain Petitioner absent an individualized showing of changed circumstances that would warrant detention under applicable law;

(8) Award Petitioner's attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

(9) Grant any further relief this Court deems just and proper.

Respectfully submitted,

By his attorneys,

 /s/  Kerry E. Doyle
Kerry E. Doyle, Esq.
MA Bar No. 565648
Green & Spiegel, LLC
1524 Delancey Street, Floor 4

Philadelphia, PA 19102
Phone: (617) 216-1248
(215) 395-8959
Fax: (215) 330-5311
kdoyle@gands-us.com
*Counsel for Petitioner*

Dated: May 8, 2026